IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD HAYTER,                                           Case No. 3:24-cv-01469-AB

            Plaintiff,

                                                 OPINION AND ORDER

    v.

TRAVELERS INDEMNITY
COMPANY, a Connecticut insurance
company, STANDARD FIRE
INSURANCE COMPANY, a Connecticut
insurance company, and AUTOMOBILE
INSURANCE COMPANY OF HARTFORD
CONNECTICUT, a Connecticut insurance
company,

            Defendants.

**BAGGIO, District Judge:**

On August 24, 2021, following an accident with an uninsured motorist, Plaintiff Richard

Hayter filed an uninsured motorist ("UM") claim with Defendant Travelers Indemnity Company,

by and through its subsidiaries Defendants Standard Fire Insurance Company and Automobile

Insurance Company of Hartford, Connecticut (collectively, "Defendants"). *See generally* Auto Claim File Notes, ECF No. 45, Pl.'s Ex. 5 at 160. Because the parties could not agree as to the value of Plaintiff's UM claim, the parties proceeded to arbitration in accordance with Plaintiff's UM insurance policy. *See generally* Auto Policy, ECF No. 45, Pl.'s Ex. 1. On May 31, 2024, a panel of three arbitrators awarded Plaintiff $5.5 million. Arbitration Award, ECF No. 45, Ex. 20. Two months later, Plaintiff initiated this action alleging that Defendants negligently handled his UM claim, which caused him significant emotional distress. Complaint ("Compl."), ECF No. 1, Ex. 1. Defendants now move for summary judgment on Plaintiff's negligence claim. Defendants' Motion for Summary Judgment ("Defs'. MSJ"), ECF No. 32. The Court held oral argument on Defendants' Motion on July 16, 2025. Minutes of Proceedings, ECF No. 49. For the reasons discussed below, the Court grants Defendants' Motion.

## BACKGROUND

### I.    Plaintiff's UM Claim

The UM claim underlying Plaintiff's negligence action arises from an automobile accident, in which Plaintiff collided with an uninsured motorist driving the wrong way on the freeway. Auto Claim File Notes Pl.'s Ex. 5 at 159; Richard Hayter 2/1/2024 Deposition ("Hayter 2/1/2024 Depo."), ECF No. 45, Pl.'s Ex. 21 at 16:8–11. As a result of the accident, Plaintiff suffered several injuries and was taken to the hospital. Declaration of Curtis Shaw ("Shaw Decl.") ECF No. 34, ¶¶ 3–4; Hayter 2/1/2024 Depo. 57:4–22. Plaintiff had purchased two insurance policies with Defendants—an automobile policy and an umbrella policy—which included $500,000 and $1,000,000 in UM coverage, respectively. Hayter 1/24/2025 Deposition ("Hayter 1/24/2025 Depo."), ECF No. 37, Defs.' Ex. 1 at 11:23–12:21. The automobile policy also included $15,000 in "no fault" personal injury protection ("PIP") coverage. Auto Policy, Pl.'s Ex. 1 at 29.

On August 24, 2021, once Plaintiff was released from the hospital, he reported the accident to Defendants. Auto Claim File Notes Pl.'s Ex. 5 at 159–60. Shortly after, Defendants opened both a PIP and UM claim. *Id*. at 126, 154. Within a few months, Defendants paid Plaintiff his $15,000 PIP policy limits for medical expenses. Shaw Decl. ¶¶ 5–6. Defendants also wrote to Plaintiff in February 2022, formally "accept[ing] coverage of Richard Hayter's claim for Uninsured Motorist benefits" and agreeing "to submit the dispute to binding arbitration" if a dispute arose regarding damages. Auto Claim File Notes Pl.'s Ex. 5 at 92.

For about one year, Defendants' claim adjuster, Ariel Dizol, attempted to reach out to Plaintiff's attorney to request updates on Plaintiff's treatment status. Declaration of Ariel Dizol ("Dizol Decl."), ECF No. 33, ¶ 6. It was not until February 2023 that Plaintiff's attorney reported to Defendants that Plaintiff had undergone surgery, and not until April 2023 that Plaintiff's attorney indicated that Plaintiff was receiving counseling for his post-traumatic stress disorder ("PTSD"). *Id*. ¶¶ 7–10.

## II.    Plaintiff Formally Demands Arbitration

On August 15, 2023, Plaintiff's attorney sent Defendants a demand package "formally institut[ing]" binding arbitration. Correspondence Emails/Letters ("Correspondences"), ECF No. 45, Pl.'s Ex. 12 at 2–4. Enclosed with the letter was supporting documentation, including Plaintiff's medical records, and the letter also included Plaintiff's own calculation of his economic damages for past and future medical expenses, a total of $123,957.26. *Id*. at 1, 3. Plaintiff demanded $1.5 million to settle his claim and gave Defendants a two-week deadline, with the possibility of an "extension of a reasonable amount of time[.]" *Id.* at 2. Defendants' claim adjuster, James Cannonie, responded the next day asking for "an additional 30-day extension" to respond, citing the quantity of medical records. Declaration of James Cannonie ("Cannonie Decl."), ECF

No. 36, ¶ 4; Correspondences Pl.'s Ex. 12 at 5. Mr. Cannonie also represented that, after searching Defendants' internal database, he found "no record of there being an umbrella policy" beyond Plaintiff's $500,000 UM primary policy. *Id.*; Cannonie Decl. ¶ 3.

That same day, Plaintiff's attorney responded to Mr. Cannonie's email with proof of Plaintiff's UM umbrella policy and an impact statement from Plaintiff describing how his injuries have affected his life. Correspondences Pl.'s Ex. 12 at 6. Plaintiff's attorney also stated that Defendants' "request for a 30 day extension to respond to the demand [is] granted." *Id.* At the time, a 30-day extension would have placed the new deadline on September 28, 2023. Mr. Cannonie, however, calendared September 29, 2023, as the new response deadline. Cannonie Decl. ¶ 6; Declaration of Rob Hickman ("Hickman Decl."), ECF No. 35, ¶ 9.

In September 2023, Defendants reassigned Plaintiff's claim to a new UM claim adjuster, Rob Hickman. Hickman Decl. ¶ 6. Mr. Hickman reviewed all of Plaintiff's supporting documentation, accepted Plaintiff's proof of his UM umbrella coverage, accepted Plaintiff's calculation of his economic damages, and evaluated Plaintiff's total claim value—including non-economic damages—to range from $200,000 to $300,000. *Id.* ¶¶ 8, 10–14; UM Worksheet, ECF No. 37, Ex. 14 (showing Mr. Hickman's calculation of Plaintiff's UM claim value). Mr. Hickman also confirmed with Plaintiff's attorney that Plaintiff was not making a lost income claim. Redacted Claim File Notes, ECF No. 37, Defs.' Ex. 4 at 12 (noting that Plaintiff's attorney disavowed a lost income claim). Then, on September 29, 2023, Mr. Hickman told Plaintiff's attorney that he did not value Plaintiff's claim at "policy limits" and made a settlement offer of $273,957. *Id.* Defendants confirmed their offer in writing on October 2, 2023. Correspondences Pl.'s Ex. 12 at 7. The next day, Plaintiff's attorney rejected Defendants' offer and terminated settlement discussions, stating that the parties were "too far apart to make further discussions at

this time worthwhile" and that Plaintiff planned "to proceed with setting a[n] [arbitration] hearing date." *Id*. at 8.

### III.    Arbitration of Plaintiff's UM Claim

During arbitration discovery, Defendants deposed Plaintiff and his wife and obtained medical records and bills for Plaintiff's treatment. Hickman Decl. ¶ 18. Defendants also retained two medical experts to evaluate Plaintiff. *Id*. In March 2024, Plaintiff's attorney sent Defendants a letter outlining several issues Plaintiff had with Defendants' claim handling and informing Defendants that Plaintiff had lost his job, which Plaintiff attributed to the accommodations he needed because of the PTSD caused by the automobile accident. Correspondences Pl.'s Ex. 12 at 10-12. A few weeks later, Plaintiff's attorney sent Defendants another letter requesting Defendants to advance to Plaintiff $273,957 before arbitration; Plaintiff asserted that Defendants had already determined that it owed him that "undisputed" amount. *Id.* at 16. The letter did not indicate that Plaintiff needed the money to obtain necessary treatment. *Id*. Defendants rejected Plaintiff's request for an advance, stating "[t]here is no 'undisputed amount.'" *Id*. at 17.

Just one month before the parties' arbitration, Plaintiff sent Defendants a final demand letter to settle for policy limits. *Id.* at 22. Plaintiff's email stated that the "demand expires after May 3, 2024." *Id*. After considering additional evidence, Defendants continued to believe that Plaintiff's claim was not worth $1.5 million and let the demand expire. Hickman Decl. ¶ 20. The parties then proceeded to an arbitration proceeding on May 31, 2024. Arbitration Award Ex. 20. That evening, the panel emailed the parties its award of $5.5 million, which included $4 million in non-economic damages. *Id.* One of the three arbitrators dissented, indicating that she believed the non-economic damages only warranted $250,000. Deposition Tr. Excerpts of Julie Elkins, ECF

No. 37, Ex. 11 at 13:18–23. By June 2024, Defendants paid Plaintiff his policy limits. Hickman Decl. ¶ 20.

### IV.    Plaintiff's Negligence Claim for Emotional Distress

Two months after the arbitration of his UM claim, Plaintiff initiated this "negligence per se" claim, alleging that Defendants' negligent handling of his UM claim violated the unfair claim settlement practices prescribed under ORS 746.230 and caused him substantial emotional distress. Compl. ¶¶ 21–30; *see also* Plaintiff's Response ("Pl.'s Resp."), ECF No. 38, 17 (describing his claim as a "negligence per se" claim arising from Defendants' alleged ORS 746.230 violations). Plaintiff alleges that, in handling Plaintiff's UM claim, Defendants (1) failed to explicitly acknowledge his UM umbrella policy; (2) failed to timely respond to his settlement demands; (3) significantly undervalued his UM claim, which forced him to demand arbitration; and (4) failed advance any undisputed amount.[1] *Id.* at ¶ 27. Plaintiff seeks non-economic damages of $28,500,000. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the case's outcome. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). A material fact creates a genuine dispute if a reasonable jury could find in favor of the nonmoving party. *Id.* The moving party must establish that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to [present] specific facts" showing a "genuine

---

[1] Plaintiff's complaint alleges nine categories of negligence; however, several categories overlap. *See* Compl., ¶ 27. For simplicity and clarity, the Court organizes Plaintiff's claim into four theories of negligence.

issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (quoting *Horphag Research Ltd v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007)). "The amount of evidence that [the non-moving party] must produce is very little, so long as it is more than purely conclusory allegations of alleged [wrongful acts], with no concrete, relevant particulars." *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004) (cleaned up). While the evidence must be viewed in the light most favorable to the nonmoving party, summary judgment is warranted if a reasonable jury, viewing the record in its entirety, could not find for the nonmoving party. *See id*. at 605.

## DISCUSSION

Defendants argue they are entitled to summary judgment because (1) the litigation privilege bars Plaintiff's claim, (2) *Moody v. Oregon Community Credit Union*, 371 Or. 772 (2023), does not extend negligence liability to value disputes involving UM insurance; and (3) even if *Moody* did extend liability, Plaintiff cannot satisfy the elements of his negligence claim because he cannot establish a genuine issue of material fact as to whether Defendants violated ORS 746.230(1). Defs'. MSJ 6. The Court agrees with Defendants that no reasonable juror could find that Defendants violated ORS 746.230 (1) and grants summary judgment in Defendant's favor on that basis. Because Plaintiff cannot establish a genuine issue of material fact as to violation of the statute, the Court need not decide whether *Moody* extends to value disputes involving UM insurance or whether the litigation privilege otherwise bars Plaintiff's claim.

## I.    Evidentiary Objections

Before addressing the merits of Defendants' Motion, the Court must first resolve Defendants' objection to Plaintiff's reliance on expert witness Robert Dietz's declaration.[2]

---

[2] The Court notes that Plaintiff argues, without providing any support, that Defendants failed to confer before filing their evidentiary objections. Plaintiff's Sur-Reply ("Pl.'s Sur-Reply), ECF No. 47, at 2; *see* Local Rule ("LR") 56(b) (noting that parties must certify that they have conferred and

Defendants' Objections ("Defs.' Obj."), ECF No. 46, Ex. 1. Mr. Dietz's declaration opines on the "claim handling of Plaintiff's UM claim by Defendants" and whether Defendants' conduct satisfied the insurance industry's "national standard of care." Declaration of Robert Dietz ("Dietz Decl.") ¶ 3. Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert . . . may testify in the form of an opinion . . . if the proponent demonstrates to the court that it is more likely than not" the expert's qualifications "will help the trier of fact to understand the evidence or to determine a fact in issue," the expert's testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods," and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert witness, however, cannot "give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation marks omitted) (emphasis in original).

Here, the Court finds that Mr. Dietz's declaration exceeds the bounds of Federal Rule of Evidence 702 by instructing and opining on the law. Specifically, Mr. Dietz's declaration summarizes what "Oregon case law, statutes and administrative rules" require of an insurer, Dietz Decl. ¶ 8, which invades the Court's "district and exclusive duty" to instruct on the law, *Nationwide*, 523 F.3d at 1058. Mr. Dietz's declaration then applies that law to the facts of this case—by, for example, opining that Defendants did not comport with the standard of care by

---

made a good faith effort to resolve the dispute before filing evidentiary objections). Even if Defendants, in fact, failed to confer, the Court exercises its discretion to consider Defendants' objections given that they have merit and are helpful to resolving the issues in this case. *See* LR 7-1(a)(3) (noting that the Court "*may*" deny motions that fail to meet LR 7-1(a)) (emphasis added).

offering substantially less than was ultimately awarded. Dietz Decl. ¶ 11. This opinion impermissibly embraces an "ultimate issue to be decided by the trier of fact." *Nationwide*, 523 F.3d at 1058. To the extent that Mr. Dietz's declaration permissibly describes and applies the "national standard of care in the insurance industry," the Court finds his opinions are not helpful to the trier of fact because this case does not concern whether Defendants' conduct breached the national standard of care but, rather, whether it breached the standard of care applicable to Plaintiff's per se negligence claim. *See Moody*, 371 Or. at 781–82 (explaining the standard of care for a negligence claim based on alleged violations of ORS 746.230).

Beyond impermissibly instructing and opining on the law, the Court finds that Mr. Dietz's declaration also provides factual narration and opinions regarding how Defendants "should have" acted that are not helpful to the trier of fact. *See* Fed. R. Evid. 702(a). Namely, several paragraphs in Mr. Dietz's declaration reinforce Plaintiff's factual narrative by summarizing evidence in a way that the Court finds duplicative and not traceable to any reliable methodology. *See Rogers v. Raymark Indus., Inc.,* 922 F.2d 1426, 1431 (9th Cir. 1991) (explaining that a "party is not entitled to have an expert testify solely because that witness can eloquently summarize the evidence"); *see also Picciano v. Clark Cnty.*, No. 3:20-CV-06106-DGE, 2024 WL 1049967, at *21 (W.D. Wash. Mar. 11, 2024) (excluding an expert's factual narration that is not "traceable to a reliable methodology" because the "jury does not require expert testimony on the presence or absence of evidence in the record"). In addition, Mr. Dietz's declaration offers opinions as to how Defendants "should have" acted differently, which the Court finds irrelevant to whether Defendants' conduct, in fact, breached the standard of care applicable to Plaintiff's negligence claim. *See Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d 1226, 1240 (C.D. Cal. 2013) ("An expert witness cannot raise triable issues of fact concerning bad faith simply by listing things the insurer could have done

differently."). For the reasons discussed above, the Court finds that paragraphs 8 and 10–49 of Mr. Dietz's declaration exceed the bounds of Federal Rule of Evidence 702. As such, the Court SUSTAINS Defendants' objections and EXCLUDES paragraphs 8 and 10–49 from the record.

## II.    Negligence

Turning to the merits of Defendants' Motion, Defendants argue that they are entitled to summary judgment on Plaintiff's negligence claims because *Moody* does not support extending negligence liability to emotional distress damages based on an UM insurance company's alleged violation of various provisions of ORS 746.230. Defs.' MSJ, 16–22. Defendants further argue that, even if *Moody* did support such an extension, Plaintiff's negligence claims fail as a matter of law because he cannot establish a triable issue of material fact regarding whether Defendants' conduct violated the ORS 746.230 provisions. *Id.* at 23–41.

To state a negligence claim under Oregon law, a plaintiff must prove "that defendant engaged in conduct that 'unreasonably created a foreseeable risk to a *protected interest* of the kind of harm that befell the plaintiff.'" *Moody*, 371 Or. at 783 (quoting *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17 (1987) (emphasis added)). Generally, individuals do not have a legally protected interest in being free from emotional distress. *Id.* at 784. However, Oregon permits recovery for emotional distress damages in limited circumstances including, for example, "when the defendant 'negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest.'" *Id.* (quoting *Philibert v. Kluser*, 360 Or. 698, 702 (2016)). Once a common-law negligence claim has been established, the doctrine of "negligence per se" permits a plaintiff to create "a presumption of negligence" by pointing to a violation of a statute or rule that defines the standard of care expected of a reasonably prudent person under the circumstances. *Id.* at 782 (quoting *Deckard v. Bunch*, 358 Or. 754, 761 n.6 (2016)). The burden then "shifts to the

violator to prove that he or she acted reasonably under the circumstances." *Deckard*, 358 Or. at 761, n.6. The plaintiff must still, however, establish the other elements of negligence. *Id*.

In *Moody*, the Oregon Supreme Court considered whether a life insurance beneficiary stated cognizable negligence per se claim for emotional distress damages based on a first-party life insurer's alleged violation of ORS 746.230(1)(d) and (f) for failure to reasonably investigate and pay her claim for policy benefits. 371 Or. at 775. In evaluating whether the beneficiary asserted a legally protected interest sufficient to recover emotional distress damages, the Court outlined several factors. *Id*. at 790–804. Balancing the factors, the Court concluded that "the insurance claim practices that ORS 746.230 requires and the emotional harm that foreseeably may occur if that statute is violated are sufficiently weighty to merit imposition of liability for common-law negligence and recovery of emotional distress damages." *Id*. at 805; *see Dailey v. University of Portland*, 340 Or. App. 80, 91 (2025) (explaining that *Moody* concluded that "the plaintiff had stated an actionable negligence claim for emotional distress damages" based on the "premise that the *statute* on which the plaintiff relied reflected a legislative intent to protect the plaintiff's peace of mind") (emphasis added)).

Although *Moody's* holding is limited to avoid making "every statutory violation the basis for a common-law negligence claim for emotional distress damages," several decisions in this District have extended *Moody*'s holding to negligence per se claims based on alleged violations of ORS 746.230 outside the life insurance context. *See, e.g., Oregon Aero Inc. v. Navigators Ins. Co.,* No. 3:21-CV-01178-AN, 2025 WL 965789, at *6 (D. Or. Mar. 31, 2025) (holding "based on [*Moody's*] analysis that other types of damages claims are now cognizable under a negligence *per se* theory based on the standard of care set forth in ORS § 746.230."); *Liquid Agents Healthcare, LLC v. Evanston Ins. Co.,* No. 1:20-CV-02225-CL, 2024 WL 4874288, at *8 (D. Or. Oct. 30,

2024) (finding that *Moody* negligence liability extends to a commercial insurer that was allegedly "negligent in four extracontractual ways, prohibited by ORS 746.230(1), which led to foreseeable economic damages"); *Mohammad v. Liberty Ins. Corp.*, No. 1:23-CV-000691-CL, 2024 WL 4627462, at *1 (D. Or. Oct. 30, 2024) (finding that a plaintiff can maintain a negligence per se claim against his homeowner's insurance company under *Moody* for emotional distress damages based on violations of ORS 746.230). Nevertheless, the Court is not aware of—and the parties do not cite—any case that has addressed whether *Moody* extends to value disputes, as alleged here, involving UM insurance—a type of insurance that implicates a different and somewhat conflicting statutory scheme. *See* ORS 742.500 *et seq*; *see also Vogelin v. Am. Family Mut. Ins.*, 346 Or. 490, 501 (2009) (explaining that "the purpose of UM coverage was to place the injured policyholder in the same position as if the tortfeasor had had liability insurance"). Here, the Court assumes without deciding that Plaintiff has sufficiently alleged a negligence claim against Defendants for emotional distress damages related to Defendants' handling of his UM claim. *See* Pl.'s Resp. 1. The Court, however, need not decide that issue, which requires deciding whether *Moody* extends to value disputes involving UM insurance, because it finds that there is no genuine issue of material fact as to whether Defendants' conduct violated ORS 746.230. *See Butters v. Travelers Home & Marine Ins. Co.*, No. 3:22-CV-00726-SB, 2024 WL 3201984, at *16 (D. Or. Apr. 22, 2024), *adopted* 2024 WL 3914871 (D. Or. Aug. 23, 2024) (not deciding whether *Moody* extends to a plaintiff's negligence per se claim involving homeowners' insurance because there was no dispute of material fact that the defendant's conduct did not violate ORS 746.230).

### a. Negligence Theory 1: Failure to Explicitly Acknowledge Plaintiff's UM Umbrella Policy

Plaintiff's first negligence theory alleges that Defendants were negligent by failing to inform him of the existence of his UM umbrella coverage when he first reported his claim, Compl.

¶¶ 10, 18, 27(a), and, subsequently, questioning the existence of his UM umbrella policy, *id.* ¶¶ 10, 18, 27(b)–(c). Plaintiff alleges that this conduct violates ORS 746.230(1)(a), which prohibits insurers from "[m]isrepresenting facts or policy provisions in settling claims," and ORS 746.230(1)(e), which prohibits insurers from "failing to affirm or deny coverage of claims within a reasonable time after completed proof of loss statements have been submitted." Pl.'s Resp. 27–31. Plaintiff also alleges this conduct violates OAR 836-080-0220(1)-(2), which prohibits insurers from "fail[ing] to fully disclose," or "concealing" from a claimant, "all pertinent benefits," and OAR 836-080-0235(1), which requires insurers to advise a claimant of the acceptance or denial of their claim 30 days after receipt of properly executed proofs of loss.[3] *Id.*

Because there is no dispute of fact that Defendants acknowledged Plaintiff's UM coverage three weeks after Plaintiff filed his claim, see Auto Claim File Notes Pl.'s Ex. 5 at 126 (acknowledging Plaintiff's UM coverage on September 17, 2021), and formally accepted that coverage six weeks after Plaintiff filed his claim, see *id.* at 92 (accepting Plaintiff's UM coverage on February 22, 2022), the Court finds that no reasonable juror could find that Defendants' failure to explicitly inform Plaintiff of the existence of his UM *umbrella* policy violated ORS 746.230(1)(e). *Cf. Wolf v. Travelers Pers. Ins. Co.*, No. 3:24-CV-01628-AN, 2025 WL 854750, at *5 (D. Or. Mar. 12, 2025) (finding, in the context of a motion to set aside, that acknowledging coverage is a meritorious defense to a *Moody* negligence per se claim); *Butters*, 2024 WL 3201984 at *20 (finding no dispute of material fact that an insurer who accepted coverage of a plaintiff's claims did not violate ORS 746.230(1)(e)).

---

[3] Although the parties did not address in their briefing—or at oral argument—whether Defendants' conduct, in fact, violated OAR 836-080-0220(1)-(2) and OAR 836-080-0235(1), the Court will address these administrative rules for the sake of completeness.

The Court also finds that such conduct could not have violated OAR 836-080-0235(1) because Defendants had already accepted Plaintiff's UM claim by the time Plaintiff submitted his proof of loss documentation over one year later. *See* Correspondences Pl.'s Ex. 12 at 1 (accepting Plaintiff's UM coverage on February 22, 2022), 2–4 (providing Defendants with proof of loss documentation on August 15, 2023).[4] Or OAR 836-080-0220(1)–(2) because Plaintiff fails to set forth any evidence—or argument—that Plaintiff's umbrella coverage was a "pertinent benefit" that required disclosure under this regulation. Even if Defendants were required to acknowledge Plaintiff's umbrella coverage under OAR 836-080-0220(1)–(2), the Court finds that Defendants have met their burden to prove their conduct was reasonable because Defendants implicitly acknowledged Plaintiff's umbrella policy after Plaintiff provided proof of the policy, see Correspondences Pl.'s Ex. 12 at 7 (referring to Plaintiff's $1.5 million settlement demand as "policy limits"), and Plaintiff never pressed for an explicit acknowledgment.

Finally, the Court finds that no reasonable juror could find that Defendants' conduct violated ORS 746.230(1)(a) because there is no dispute of fact that Defendants did not affirmatively misrepresent any of Plaintiff's UM policy provisions. *See* ORS 746.230(1)(a). Rather, Defendants truthfully indicated—consistent with its internal records[5]—that it had "no record of there being an umbrella policy." Cannonie Decl. ¶ 3; *cf. Mayes v. Am. Hallmark Ins. Co. of Texas*, No. 22-35075, 2024 WL 3899231, at *3 (9th Cir. Aug. 22, 2024) (indicating that a

---

[4] Plaintiff conceded at oral argument that Defendants first received all information to evaluate his UM claim on August 15, 2023.

[5] Plaintiff's response appears to suggest that his Claim Summary indicates that Defendants, in fact, had a record of Plaintiff's UM umbrella coverage and, thus, Defendants' representation was untruthful. Pl.'s Resp., 29 (citing Claim Summary at page 5). Because, contrary to Plaintiff's representation, the Court cannot locate Plaintiff's UM umbrella coverage in his Claim Summary, the Court finds that Plaintiff fails to create a genuine dispute of material fact that Defendants' statement was false. The Court further notes that Plaintiff conceded at oral argument that he could not identify any false statements that would support this theory of negligence.

violation of ORS 746.230(1)(a) requires a showing of statements that are false). As such, Plaintiff cannot establish that Defendants' conduct created an unreasonable risk to his protected interest under the statute—an element necessary to establish negligence, see *Moody*, 371 Or. at 783—and the Court grants Defendants' Motion with respect to this theory.

### b. Negligence Theory 2: Failure to Respond to Plaintiff's Settlement Demands

Plaintiff's second theory of negligence alleges that Defendants were negligent by failing to timely respond to his August 2023 settlement demand within 30 days and/or within the "allowed extension of time," Compl. ¶¶ 27(d)-(e), and failing to respond to Plaintiff's renewed April 2024 settlement demand, *id.* at ¶ 27(f). Plaintiff argues that this conduct violates ORS 746.230(1)(d), which prohibits insurers from "[r]efusing to pay claims without conducting a reasonable investigation based on all available information," and (f), which prohibits insurers from "[n]ot attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear." Pl.'s Resp. 31.

Even if Defendants' failure to timely respond to Plaintiff's settlement demands was the product of an unreasonable investigation of Plaintiff's UM claim, the Court finds that no reasonable juror could conclude Defendants' conduct violated ORS 746.230(1)(d) because Defendants never *refused* to pay Plaintiff's UM claims. *Cf. Moody*, 371 Or. at 805–06 (finding that a plaintiff stated a negligence per se claim under ORS 746.230(1)(d) based on a life insurer's *denial* of coverage absent a reasonable investigation). Instead, Defendants disagreed about the *value* of Plaintiff's claim. *See* Correspondences Pl.'s Ex. 12 at 2–7 (showing that Plaintiff valued his UM claim at $1.5 million, while Defendants valued the claim at $273,957). In fact, following arbitration, the record establishes that Defendants promptly paid Plaintiff's claim. *See* Hickman Decl. ¶ 20.

The Court also finds that no reasonable juror could find Defendants' one-day-late response to Plaintiff's August 2023 settlement demand violated ORS 746.230(1)(f) because Plaintiff produces no evidence that Defendants delayed their response in bad faith. To the contrary, Defendants' response was in accordance with Plaintiff's agreement that a 30-day extension was, at a minimum, a reasonable amount of time to respond to his demand. *See* Correspondences Pl.'s Ex. 12 at 2 (indicating that Plaintiff would grant a reasonable extension of time to respond), 6 (granting Defendants' request for a 30-day extension). Plaintiff also provides no evidence that Defendants' decision to allow his April 2024 demand to lapse—as opposed to explicitly reject the offer—was an unreasonable response to his offer or made in bad faith. *See* Correspondences Pl.'s Ex. 12 at 22 (noting that Plaintiff's settlement demand would *expire* after May 3, 2024). Accordingly, Plaintiff cannot establish that Defendants' conduct created an unreasonable risk to his protected interest under the statute—an element necessary to establish negligence, see *Moody*, 371 Or. at 783—and the Court grants Defendants' Motion with respect to this theory.

### c. Negligence Theory 3: Offering Significantly Less than Plaintiff's Arbitration Award

Plaintiff's third theory of negligence is that Defendants were negligent by "significantly undervaluing plaintiff's UM claim based on all the available information . . . thereby compelling Plaintiff to initiate litigation to recover amounts due" under his UM policy. Compl. ¶ 27(i). Plaintiff argues that this conduct violates ORS 746.230(1)(d), which prohibits insurers from "[r]efusing to pay claims without conducting a reasonable investigation based on all available information," and (g), which prohibits insurers from "[c]ompelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered in actions brought by such claimants." Pl.'s Resp. 17–18.

As with Defendants' failure to timely respond to Plaintiff's settlement demands, the Court finds that no reasonable juror could find Defendants' alleged undervaluing of Plaintiff's UM claim violated ORS 746.230(1)(d) because Defendants never *refused* to pay Plaintiff's UM claim; rather, Defendants *disputed* the value of Plaintiff's UM claim. *Cf. Moody*, 371 Or. at 805–06 (finding that a plaintiff stated a negligence per se claim under ORS 746.230(1)(d) based on a life insurer's *denial* of coverage absent a reasonable investigation). The Court also finds that Defendants' conduct could not have compelled arbitration—in violation of ORS 746.230(1)(g)—because Plaintiff demanded arbitration *before* Defendants had the opportunity to value Plaintiff's claim or tender a settlement offer. *See* Correspondences Pl.'s Ex. 12 at 2–4 (renewing Plaintiff's arbitration demand sent on September 23, 2021, and providing Defendants for the first time with documentation supporting Plaintiff's proof of loss). Similarly, Defendants' continued failure to tender Plaintiff his policy limits leading up to arbitration cannot reasonably be interpreted to have violated ORS 746.230(1)(g) because Plaintiff had already decided to initiate arbitration. *Cf.* ORS 746.230(1)(g) (prohibiting insurers from "compelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered").

Even if Defendants' $273,957 settlement offer in response to Plaintiff's August 2023 arbitration demand could reasonably be interpreted to have compelled arbitration, the Court finds no dispute of material fact regarding the reasonableness of Defendants' conduct. *See Deckard*, 358 Or. at 761, n.6. In valuing Plaintiff's UM claim, Mr. Hickman's UM worksheet suggests that he reviewed all the documents that Plaintiff attached to his August 2023 arbitration demand, accepted Plaintiff's $123,957.26 calculation of his economic damages, and determined—based on his years of experience dealing with UM claims—that Plaintiff's UM claim did not support $1.3 million in non-economic damages. Hickman Decl. ¶ 11; UM Worksheet Ex. 14; *cf. Foraker v. USAA Cas.*

*Ins. Co.*, No. 3:14-CV-87-SI, 2020 WL 1914935, at \*7–8 (D. Or. Apr. 20, 2020) (finding, in the context of a claim for breach of implied covenant of good faith and fair dealing, that an insurance company violated ORS 746.230(1)(g) by *willfully ignoring* relevant evidence to support a settlement offer significantly lower than the amount ultimately recovered by the policyholder). Although Plaintiff argues that Defendants' valuation ignored his lost income claim, Defendants set forth unrebutted evidence that Plaintiff's attorney, at the time, had expressly disavowed a claim for lost income. *See* Redacted Claim File Notes ECF No. 37, Defs.' Ex. 4 at 12.

The only evidence that Plaintiff offers to create a genuine dispute of material fact about whether Defendants' settlement offer in response to his August 2023 demand was unreasonable is his $5.5 million arbitration award.[6] In Oregon, however, Plaintiff's arbitration award cannot be used in hindsight to create a genuine dispute of material fact. *See Cain v. Rijken*, 300 Or. 706, 720, (1986) (finding that "[p]roof aided by hindsight . . . is insufficient to establish negligence"); *see also Ransom v. Radiology Specialists of Nw.,* 363 Or. 552, 570 (2018) (finding, in the context of a motion to compel discovery, that evidence affected by hindsight is a permissible basis to exclude evidence at trial); *Jones v. Mitchell Bros. Truck Lines*, 266 Or. 513, 527, 527 (1973) (finding that a trial court correctly instructed a jury on negligence, including instructions that "conduct is not to be judged in light of hindsight"). The Court therefore finds no issue for trial regarding whether Defendants' failure to offer Plaintiff his UM policy limits violated ORS 746.230(1)(d) or (g). Accordingly, Plaintiff cannot establish that Defendants' conduct created an unreasonable risk to his protected interest under the statute—an element necessary to establish negligence, see *Moody*, 371 Or. at 783—and the Court grants Defendants' Motion with respect to this theory.

---

[6] Plaintiff also relies on Mr. Dietz's declaration, which this Court excludes for reasons previously discussed. *See* Pl.'s Resp. 18-19.

18 – OPINION AND ORDER

### d. Negligence Theory 4: Failing to Advance Payment

Plaintiff's final theory of negligence alleges that Defendants were negligent "by failing to pay any undisputed amount of UM benefits" and "adequately respond" to Plaintiff's request for such payments. Compl. ¶¶ 27(g)–(h). Plaintiff argues that this conduct violates ORS 746.230(1)(d), which prohibits insurers from "[r]efusing to pay claims without conducting a reasonable investigation based on all available information," and (f), which prohibits insurers from "[n]ot attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear." Pl.'s Resp. 25.

Like Plaintiff's other theories of negligence, the Court finds that no reasonable juror could find Defendants' failure to advance payment to Plaintiff violated ORS 746.230(1)(d) because Defendants never *refused* to pay Plaintiff's UM claim; rather, Defendants *disputed* the value of Plaintiff's UM claim. *Cf. Moody*, 371 Or. at 805–06 (finding that a plaintiff stated a negligence per se claim under ORS 746.230(1)(d) based on a life insurer's *denial* of coverage absent a reasonable investigation). The Court also finds that such conduct could not have violated ORS 746.230(1)(f) because Plaintiff does not cite—and the Court is not aware of—any authority to suggest that subsection (1)(f) requires an insurer to advance "undisputed" amounts. Even if it did, Defendants conduct would still not violate ORS 746.230(1)(f) because $273,957 represents Defendants' settlement offer, not an undisputed amount. *See* Correspondences Pl.'s Ex. 12 at 7. Accordingly, Plaintiff cannot establish that Defendants' conduct created an unreasonable risk to his protected interest under the statute—an element necessary to establish negligence, see *Moody*, 371 Or. at 783—and the Court grants Defendants' Motion with respect to this theory. Because Defendants are entitled to summary judgment based on the Court's finding that there is no genuine

issue of material fact as to whether Defendants violated ORS 746.230, the Court declines to reach

Defendants' arguments regarding the applicability of *Moody* and the litigation bar.

## CONCLUSION

For the above-mentioned reasons, the Court GRANTS Defendants' Motion for Summary

Judgment [32]. Accordingly, Plaintiff's claims against Defendant are dismissed with prejudice.

IT IS SO ORDERED.

DATED this  4th  day of August 2025.

AMY M. BAGGIO
United States District Judge